UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID J. LANDRY AND YANHUA OUYANG | CIVIL ACTION |
| VERSUS | NO: 07-0506 |
| MICHAEL CHERTOFF, SECRETARY OF HOMELAND SECURITY ET AL. | SECTION: "S" (4) |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is **DENIED**.  (Document #8.)

**IT IS FURTHER ORDERED** that the parties prepare memoranda and evidence as they would in supporting or opposing a motion for summary judgment and submit them to the court within 15 days of the entry of this order.

### I. BACKGROUND

On January 7, 2005,  the United States Bureau of Citizenship and Immigration Services (USCIS) received a Form I-485 application to adjust status, pursuant to 8 U.S.C. § 1255,  and become a permanent resident from Yanhua Ouyang, the wife of David J. Landry.  On January 20, 2005, USCIS made a request to the Federal Bureau of Investigation (FBI) to process

Ouyang's name check.

On July 26, 2006, Ouyang received a response from the USCIS in Jackson, Mississippi,[1] to her inquiry concerning the status of her application. The application was delayed and was still pending due to security checks, which are required for all applicants. In August 2006, Ouyang appeared for an appointment with officials at the New Orleans office and learned that the FBI had not provided the immigration service with the results of the "name check." Landry conducted some research, which revealed that Ouyang's case was one of thousands experiencing a "name check" delay and that no time frame could be given as to when it might occur.

Landry and Ouyang filed a *pro se* complaint against Michael Chertoff, Secretary of Homeland Security; Emilio T. Gonzalez, Director of USCIS, and Robert S. Mueller, III, Director of the Federal Bureau of Investigation, pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.,[2] and the Mandamus Act, 28 U.S.C. § 1361,[3] to compel agency action on Ouyang's application because there has been an unreasonable delay. The defendants filed a

---

[1]   The New Orleans office was temporarily closed due to Hurricane Katrina.

[2]   Section 706(1) provides:
**Scope of review**
   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
   (1) compel agency action unlawfully withheld or unreasonably delayed.

[3]   Section 1361 provides:
**Action to compel an officer of the United States to perform his duty**
   The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

motion to dismiss for lack of subject matter jurisdiction.

## II. DISCUSSION

### A. Legal standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case."  Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  Id.  In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists.  Id.

### B. Defendants' motion to dismiss for lack of subject matter jurisdiction

The defendants contend that the court lacks jurisdiction over Ouyang's claim.  The defendants argue that the process of adjusting the status of an alien, who has been lawfully admitted to the United States, to that of permanent resident is discretionary and is, thereby, removed from judicial review by 8 U.S.C. §§ 1252(a)(2)(B)(I), (a)(2)(B)(ii), and (g).  To support the contention, the defendants rely on Gomez-Chavez v. Perryman, 308 F.3d 796 (7th Cir. 2002).

In Gomez-Chavez, a Mexican national who had been removed from the United States, reentered the United States without authorization.  Id. at 798-99.  Gomez-Chavez married a United States citizen shortly after his re-entry and applied for a change in status:  Form I-30 seeking to be classified as an immediate family member and a Form I-485 to adjust status to that of an alien lawfully admitted for permanent residence.  Id. at 799.  During an interview in

3

conjunction with his application for adjustment of status on July 18, 2001, the interviewing agent realized that Gomez-Chavez had reentered the country illegally.  Id.  The order of removal of January 30, 1999, was immediately reinstated.  Id.  On July 25, 2001, Gomez-Chavez filed an I-212 application for permission to reapply for admission into the United States after removal.  Id.  Gomez-Chavez also filed a complaint for mandamus and declaratory judgment.  The district court dismissed the complaint for lack of jurisdiction "on the ground that all challenges to removals belonged only in the court of appeals upon a timely petition for review."  Id.  The Court of Appeals affirmed the district court's judgment.  Id. at 800.

The court concludes that Gomez-Chavez is inapplicable in this case.  Section 1252, upon which Gomez-Chaves is based, and other cases cited by the defendants apply to judicial review of orders of removal.  See Tang v. Chertoff, 2007 WL 1650938 (N.D.Cal. 2007) at *2, n.3 (unpublished) (agreeing with cited cases that conclude that § 1252 limits judicial review of removal orders).  Although some of the aliens in the cited cases characterize their claim as an application for adjustment of status, § 1252(g) precludes jurisdiction because they are actually seeking review of the decision to execute a removal order and the adjustment of status must be considered in the removal proceedings.  See Li v. Agagan, 2006 WL 637903 (5th Cir. 2006); 8 C.F.R. § 245.2(a)(1).  Ouyang is not in the United States illegally, and she is not subject to a removal order.

Ouyang invokes jurisdiction under the Mandamus Act and the APA.  Ouyang's acknowledgment that there exists a remedy under the APA forecloses mandamus jurisdiction, which requires that the party has no other remedy.  See Jones v. Alexander, 609 F.2d 778, 781

(5th Cir. 1980) (one of the elements that must exist before mandamus can issue is that no other adequate remedy is available). Therefore, the court examines its jurisdiction under federal question, 28 USC § 1331, and the APA. See Singh v. Still, 470 F.Supp.2d 1064, 1067 n.5 (N.D.Cal. 2006).[4]

A district court has subject matter jurisdiction over a sufficiently stated claim for relief under the APA. See Norton v. Southern Utah Wilderness Alliance, 124 S.Ct. 2373 (2004). In Norton, the Supreme Court considered the limits the APA places upon judicial review of agency inaction.

> The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.' 5 U.S.C. § 702. . . . '[A]gency action' is defined in § 551(13) to include 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.' The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'
> . . . .
> The final term in the definition, 'failure to act,' is in our view properly understood as a failure to take an agency action–that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13). Moreover, even without this equation of 'act' with 'agency action' the interpretive canon of *ejusdem generis* would attribute to the last item (failure to act) the same characteristic of discreteness shared by all the preceding items. A 'failure to act' is not the same thing as a 'denial.' The latter is the agency's act of saying no to a request; the former is imply the omission of an action without formally rejecting a request–for example, the failure to promulgate a rule or take some decision by a statutory deadline. The important point is that a 'failure to act' is properly understood to be limited . . . to a discrete action.
> . . . [T]he only agency action that can be compelled under the APA is action legally required.

---

[4] The mandatory injunction authorized under the APA is technically distinct from a writ of mandamus, but the relief is identical under either statute. See Independence Mining Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997).

> . . . .
> [Section] 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'

124 S.Ct. at 2378-79.

"Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Id. at 2379. Ouyang has alleged that the defendants failed to take action in processing her application that it is required to take. While the duty to grant an adjusted status is discretionary, the duty to process I-485 applications is nondiscretionary. See Singh v. Still, 470 F.Supp.2d at 1067.

The remaining jurisdictional issue is whether the defendants can delay unreasonably in acting. The language of 5 U.S.C § 555(b) of the APA requires agency action to occur within a reasonable time. Ouyang's allegation in the complaint that there has been an unreasonable delay of approximately two and a half years satisfies this element for an action under the APA.

Accordingly, the court has subject matter jurisdiction under § 1331 and the APA, and the defendants' motion to dismiss the complaint is denied.

## C.  Notice of *sua sponte* judgment

The court hereby informs the parties that it is considering granting summary judgment *sua sponte*. The court will consider the issue whether there has been an unreasonable delay in adjudicating the I-485 application, specifically the "name check" of the applicant. The parties shall prepare memoranda and evidence as they would in supporting or opposing a motion for summary judgment and submit them to the court within 15 days of the entry of this order.

New Orleans, Louisiana, this  5th  day of July, 2007.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE